## ST. JOHNS RIVER WATER MANAGEMENT DISTRICT v HENSON

Case No. 88-15731-CA

Fourth Judicial Circuit, Duval County

August 17, 1989

### APPEARANCES OF COUNSEL

**Clare E. Gray,** and **Jennifer L. Burdick,** for plaintiff.

**William G. Cooper,** for defendant.

**Paul M. Harden,** co-counsel for defendant.

### OPINION OF THE COURT

MATTOX S. HAIR, Circuit Judge.

### *FINAL JUDGMENT*

This action was filed by Plaintiff, St. Johns River Water Management District (hereinafter "the District"), against Defendant Larry K. Henson (hereinafter "Defendant" or "Henson"). A non-jury trial was held on March 24, June 29 and 30, 1989.

The issue before the Court is whether the activities of Defendant on the subject property required a permit from the District pursuant to Chapter 40C-4, Florida Administrative Code, and if so, the appropriate remedy to properly redress the violation of law.

The Court having considered the testimony of the witnesses, the evidence, the arguments and memoranda of counsel, finds as follows:

## FINDINGS OF FACT

1. On December 1, 1987, and until May 25, 1989, Henson owned and controlled approximately 33 acres of real property bounded on the south by J. Turner Butler Boulevard and a Jacksonville Transportation Authority drainage swale, and bounded on the east by property, adjacent to Southside Boulevard, owned by Florida Northeast Timber Co. The property is located in Sections 11 and 12, Township 3 South, Range 27 East, Duval County, Florida. (Pre-trial stipulation, Deed attached to Plaintiff's Amended Complaint).

2. The property is located within the geographic boundaries of the District. (Pre-trial stipulation).

3. The property is located within a larger wetland area known as Tiger Hole Swamp and is part of the headwaters of Pottsburg Creek, a tributary of the St. Johns River. (Pre-trial stipulation, Grant). The property is a wetland as defined by Chapter 40C-4.021(11), Florida Administrative Code.

4. In 1973, drainage improvements were proposed for the subject property by prior owners (Defendant' Exhibits 1, 2) and a ditch was excavated at some period thereafter along the western boundary of the property perpendicular to the JTA swale which parallels J. Turner Butler Boulevard. The exact dimensions of the ditch as originally excavated are unknown. In 1983, the south end of he ditch was plugged by an earthen berm. (Flynn). A PVC pipe protruded into the ditch from the berm on the JTA right of way side of the property, but there was no evidence that water drained from the ditch to the swale through this pipe. (Flynn).

5. In January 1988, Henson authorized Franklin to clear the trees from his property. (Henson, Franklin). Because the property was wet, Franklin excavated a new ditch approximately 600 feet long, four feet wide and two feet deep along what he believed was the eastern edge of Henson's property. (Franklin). This ditch was constructed in wetlands. (Grant, Pacheco).

6. Franklin testified that he dug the new ditch to obtain access to the property for his equipment. There is water standing in this ditch. (Plaintiff's Exhibit 10, photo 6 and 16, photo 1).

7. James Ray, a District employee, performed a site inspection on January 15, 1988. This inspection revealed that approximately 5 acres

133

of wetland trees had been pushed over in addition to excavation of the new ditch on the east edge of the property. (Ray transcript pp. 7, 12; Plaintiff's Exhibits 2, 3). At this time the pre-existing ditch along the western boundary of the property was still separated from the JTA drainage swale by an earthen berm. (Ray transcript, p. 86). Ray advised Franklin that the work he had done on the site required a permit from the District and recommended that he cease activity until a permit was obtained. (Ray transcript, p. 41). Henson had not obtained a permit from the District prior to commencing this work. (Henson, Wirz).

8. In February 1988, Henson met with District representatives and was informed that his activities on the property required an MSSW permit as they constituted construction of a surface water management system serving an area of five or more contiguous acres of wetlands directly connected to a wetland not wholly owned. (Wirz, Plaintiff's Exhibit 6).

9. On March 23, 1988, Henson submitted an MSSW permit application to the District for the commercial development of the subject property (Plaintiff's Exhibit 13). The application was subsequently denied by the District due to Henson's failure to complete the application by submitting the necessary additional information. (Pacheco).

10. During the week ending May 13, 1988, Richard Schwabe, a JTA highway maintenance coordinator, while supervising maintenance work in the JTA swale along the southern boundary of the subject property, personally observed the earthen berm separating the pre-existing ditch from the JTA swale.

11. During Memorial Day weekend, May 28-30, 1988, and after receiving authorization from Henson, Franklin excavated eight inches to one foot of silt from the bottom of the pre-existing ditch and removed trees which had fallen over into the ditch. The pre-existing ditch showed no indication of having ever been routinely maintained. (Henson, Franklin, Flynn). Spoil from the bottom of the pre-existing ditch and from its extension was placed by Franklin in wetlands along the west side of the ditch. (Ray, Franklin). He also placed some of the spoil in wetlands on the east side of the ditch at its sound end. (Franklin). There was also a PVC pipe on the spoil pile. (Ray transcript, p. 32; Plaintiff's Exhibits 1 and 4, photo 2). No permit was obtained by Henson prior to undertaking work on the pre-existing ditch. (Henson, Wirz).

12. Aerial photography taken on May 29, 1988, showed that the pre-existing ditch had been extended south through the area where the

134

berm had existed and toward the JTA drainage swale. (Humphrey, Plaintiff's Exhibit 20).

13. During the week ending June 3, 1988, Schwabe again visited the subject area and observed that the JTA swale had been deepened and the earthen berm excavated from the pre-existing ditch, thereby connecting the swale and the pre-existing ditch. The connection between the ditch and swale where the berm had previously existed was about 4-5 feet deep. This observation was corroborated on June 24, 1988, when James Ray again inspected the property and discovered that the earthen berm which had been present at the south end of the pre-existing ditch on his inspection of January 15, 1988, had been removed and the swale had been deepened and channelized. (Ray transcript, pp. 27, 28; Schwabe). This work was neither done nor authorized by JTA, and the spoil from work in the swale was placed along the fence on JTA property west of the ditch connection to the swale. (Schwabe, Plaintiff's Exhibits 1 and 4, photo 4). The connection had entailed excavation underneath the fence and the resulting spoil was placed east of the ditch on Henson's property (Plaintiff's Exhibits 4, photo 2; and 10, photo 6). THe spoil had been recently excavated as evidenced by its high moisture content, lack of vegetation, and the fact that no erosion had yet occurred. (Ray transcript, p. 38, 39, Plaintiff's Exhibit 1).

14. On July 1, 1988, the District again advised Henson by certified letter that the previous activities on the property as well as the new excavation in the pre-existing ditch were a violation of Chapter 40C-4, Florida Administrative Code. When asked to plug up the ditch connection, Henson refused. (Wirz, Plaintiff's Exhibit 7).

15. Henson performed no further work on the property. (Henson, Franklin).

16. Although experts for the parties had differing opinions regarding whether the clearing work done on the property was a normal harvesting practice consistent with the practice of silviculture (Mastin, Austin), the court finds that the management of the property was neither intended to be nor consistent with the practice of silviculture.

17. The court finds that the activities on the property have adversely altered and will continue to alter some of the vital functions provided by this wetland as part of the headwaters of Pottsburg Creek. (Grant, Pacheco).

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the District, Defendant and the subject matter presented in this action.

2. The District is a governmental agency established pursuant to Chapter 373, Florida Statutes, and charged with the authority to implement, administer and enforce a permitting program pursuant to Section 373.413, *et seq.,* Florida Statutes, and Chapter 40C-4, Florida Administrative Code. The permitting program established pursuant to the statutes and rule is called "Management and Storage of Surface Waters" (MSSW). (Pre-trial stipulation).

3. The District is authorized by Sections 373.413 and 373.416, Florida Statutes, and Chapter 40C-4.041(2)(b)7, Florida Administrative Code, to require that permits be obtained prior to the construction, alteration, operation, or maintenance of a surface water management system which serves an area of five or more contiguous acres of a hydrologically sensitive area with a direct connection to a hydrologically sensitive area not wholly owned by the applicant. (Pre-trial stipulation).

4. Section 40C-4.021, Florida Administrative Code, contains the following definitions:

(3) "Construction means any activity including land clearing, earth moving, or the erection of structures which will result in the creation of a system.

(8) "Surface water management system" or "system" means any combination of dams, impoundments, reservoirs, appurtenant works, or works that provide drainage, water storage, conveyance, or other surface water management capabilities."

5. Section 2.0 of the District's Applicant's Handbook for Management and Storage of Surface Waters, which is a rule by virtue of Section 40C-4.091, Florida Administrative Code, provides the following definitions:

(aa) "Works" are artificial structures, including, but not limited to canals, conduits, channels, culverts, pipes, and other construction that connects to, draws water from, drains water into, or is placed in or across waters in the state.

(d) "Artificial structures(s)" - Any object constructed or installed by man which has a water management effect, including, but without limitation thereof, dikes, levees, embankments, ditches, canals, conduits, channels, culverts, and pipes.

(z) "Wetlands" are hydrologically sensitive areas which are identified by being inundated or saturated by surface or ground water with a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically

136

adapted for life in saturated soil conditions. Wetlands generally include swamps, marshes, bogs, and similar areas.

6. The construction of the new ditch, deepening of the pre-existing ditch, as well as extension of this pre-existing ditch and removal of the berm, constitute "construction" or "alteration" of "works" which make up a "surface water management system," pursuant to Chapter 40C-4, Florida Administrative Code. All of the activities on the property were conducted in wetlands directly connected to other off-site wetlands. This surface water management system serves to drain the wetlands by lowering the ground water table and also drains the property off-site through the pre-existing ditch, and eventually to Pottsburg Creek. It is clear that the activities on the property exceed the permitting threshold found in Section 40C-4.041(2)(b)7.c, Florida Administrative Code. Henson was required to acquire a MSSW permit prior to any of the referenced works, and also prior to his removal of trees from the subject property.

7. Defendant raised three affirmative defenses. The first is that Henson no longer owns the subject property. This defense is without merit as a matter of law, since a violation of Part IV of Chapter 373, Florida Statutes, is not contingent upon property ownership.

8. Second, Defendant also claims (fifth affirmative defense) that his activities in cleaning the pre-existing ditch were exempt because of Section 403.813(2)(g), Florida Statutes, and Section 373.403(8), Florida Statutes which read in pertinent part as follows:

(2) No permit under Chapter 403 or Chapter 373 . . . shall be required for activities associated with the following types of projects: . . .

(g) The maintenance of existing . . . drainage ditches, provided that spoil material is deposited on a self-contained, upland spoil site which will prevent the escape of the spoil material into waters of the state . . . . In all cases, no more dredging is to be performed than is necessary to restore the . . . drainage ditch to its original design specifications.

Statutory exemptions are to be construed strictly against those claiming the exemption. *Pres. of Corp. of Jesus Christ of Latter-Day Saints v St. Johns Water Management District,* 489 So.2d 59 (Fla. 5th DCA 1986); *Pal-Mar Water Management District v Board of County Commissioners,* 384 So.2d 232 (Fla. 4th DCA 1980). Henson must establish his entitlement to the exemption by clear and convincing evidence. *Robinson v Fix,* 113 Fla. 151, 151 So. 512 (Fla. 1933). Finally, any maintenance activity must be routine and custodial in

nature, having only minimal adverse environmental effects. *See Pres. of Corporation, supra.* Henson has failed to present sufficient evidence to support this exemption in that there was no evidence presented regarding routine maintenance and the ditch deepening and soil deposits had more than a minimal effect.

9. Third, Henson has also asserted that his activities were exempt from District permitting pursuant to the silvicultural exemption contained in Section 373.406(2), Florida Statutes (first affirmative defense). The pertinent rule provision is Section 3.4.1(b) of the MSSW Applicant's Handbook (A.H.) which provides that if:

(1) the topographic alterations are consistent with the practice of silviculture *and*

(2) are not for the sole or predominant purpose of impounding or obstructing surface waters, an exemption is proper. None of the activities on the subject property qualify for this exemption.

10. Having resolved the liability issue, the Court will consider an appropriate remedy. The policy of Chapter 373, Florida Statutes, is to protect and preserve the water resources of the state. Sections 373.016, 373.129(3), Florida Statutes. A civil penalty may be imposed by the Court in order to discourage Defendant and others from repeating such violations.

Accordingly, it is hereby

ADJUDGED:

1. Henson shall replace the berm which was excavated from between the pre-existing ditch on the property and the JTA drainage swale. The intent is to replace the berm in the same condition as it existed in January, 1988. This restoration will take place within 30 days from the date hereof.

2. Henson shall pay to the District a civil penalty of $6,825.00.

3. The Court shall retain jurisdiction for the purpose of taxation of costs and awarding attorney's fees, if any, and for the purpose of entering any further orders which may be necessary to carry out the intent of this judgment.

ORDERED at Jacksonvile, Florida, this 17th day of August, 1989.